JOHN P. LeCRONE (State Bar No. 115875)
 johnlecrone@dwt.com
CAMILO ECHAVARRIA (State Bar No. 192481)
 camiloechavarria@dwt.com
NICOLE M. SANDOZ (State Bar No. 260992)
 nicolesandoz@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California  90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
PLAYBOY ENTERPRISES
INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LONG, JR., an individual suing on behalf of himself, all those similarly situated and the general public,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>PLAYBOY ENTERPRISES INTERNATIONAL, INC. and DOES 1 through 500,<br><br>　　　　　Defendants. | Case No. **CV11-02128 JAK (AJWx)**<br>Assigned to the Hon. John A. Kronstadt<br><br>**DEFENDANT PLAYBOY ENTERPRISES INTERNATIONAL, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:　December 19, 2011<br>Time:　8:30 a.m.<br>Room:　750<br><br>Action Filed: January 31, 2011<br>Trial Date:　Not set<br><br>[Separate Statement of Uncontroverted Facts and Conclusions of Law, and Declarations of Fawcett, Thomerson, and Echavarria, with Exhibits A-N, filed concurrently] |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 19, 2011, at 8:30 a.m. in courtroom 750 of the Roybal Courthouse, located at 255 East Temple Street, Los Angeles, California 90012, or as soon thereafter as the matter may be heard, defendant Playboy Enterprises International, Inc. ("PEII") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment, or, in the alternative, for summary adjudication on the grounds that PEII is entitled to judgment as a matter of law as to each and every claim asserted by plaintiff David Long, Jr. ("Plaintiff") as follows:

1. Plaintiff's First, Second, and Third Causes of Action for violation of California Civil Code Sections 51, 51.5, and 51.6 each fail because PEII did not deny, aid or incite a denial of full and equal accommodations or services to Plaintiff on the basis of his gender. PEII was not involved in the allegedly discriminatory pricing decision for the 2009 White Party event held at the Playboy Mansion and did not discriminate against Plaintiff in any way; and

2. Plaintiff's Fourth, Fifth, and Sixth Causes of Action for violation of California's Unfair Competition Law ("UCL"), Business & Professions Code Section 17200, each fail because Plaintiff cannot establish an underlying violation of Civil Code Sections 51, 51.5, or 51.6 or other policy, and there was no unlawful, unfair, or fraudulent business practice.

This Motion is based upon this Notice of Motion and the accompanying Memorandum of Points and Authorities, the concurrently filed Separate Statement of Uncontroverted Facts and Conclusions of Law, the Declarations of Hank Fawcett, Teri Thomerson, and Camilo Echavarria, with Exhibits A-N, the pleadings

---

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

1

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  and records on file in this action and any oral arguments and documentary evidence
2  as may be presented at the time of the hearing on the Motion.
3      This Motion is made following the conference of counsel pursuant to L.R. 7-
4  3 which took place on October 12, 2011.

6  DATED: November 7, 2011         DAVIS WRIGHT TREMAINE LLP
                                   JOHN P. LeCRONE
                                   CAMILO ECHAVARRIA
                                   NICOLE M. SANDOZ


                                   By: _____
                                           John P. LeCrone

                                   Attorneys for Defendant
                                   PLAYBOY ENTERPRISES
                                   INTERNATIONAL, INC.

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff David Long, Jr. ("Plaintiff"), a self-proclaimed "partier," attended a charity event at the Playboy Mansion in 2009 benefiting the Keep a Breast Foundation. The event promoter, MIXnightlife ("Promoter"), organized and sponsored the "2009 White Party" that Plaintiff attended, renting the Playboy Mansion from Defendant Playboy Enterprises International, Inc. ("PEII") as a venue for its event. Plaintiff's lawsuit is based entirely on the alleged fact that he (and all other men at the event) had to pay more to attend the 2009 White Party than women, allegedly in violation of California law. But the undisputed facts demonstrate that even if *the Promoter* acted contrary to law, Plaintiff cannot prove his claims *against PEII*.

The undisputed facts establish that PEII had nothing to do with the pricing for the 2009 White Party. PEII charged *the Promoter* a single price for each person who attended the event, irrespective of gender. PEII had no involvement in what the Promoter charged persons who attended the Event, or how the Promoter chose to raise funds for the Event. Nor did PEII review any advertisement that set forth the pricing for the Event. At bottom, PEII did not promote the 2009 White Party, it did not sponsor the event, and it did not collaborate with the Promoter in any way about pricing for the event.

Under this backdrop, Plaintiff's claims fail because he cannot show that PEII discriminated (or aided and incited discrimination) against Plaintiff as required by California's Unruh Civil Rights Act and Gender Tax Repeal Act (Civil Code Sections 51, 51.5, and 51.6). Likewise, Plaintiff's Unfair Competition claims are equally deficient because PEII's business practice of renting out the Playboy Mansion for a third-party charity event is neither unlawful nor unfair.

Accordingly, the undisputed facts require that the Court grant summary judgment in favor of PEII and dismiss this action in its entirety.

## II. STATEMENT OF BACKGROUND AND UNDISPUTED FACTS

### A. PEII's Playboy Mansion

Originally organized in 1953 to publish *Playboy* magazine, PEII is now a brand-driven multimedia entertainment and lifestyle company. (*See* Declaration of Camilo Echavarria ("Echavarria Decl.") at ¶ 3, Ex. A.) *Playboy* is one of the most widely recognized brands in the world, with programming and content available on television and online across the world. (*Id.*) The licensing side of the business focuses on leveraging the *Playboy* name and marks internationally through merchandising, third-party-owned and operated retail stores, and location-based entertainment venues. (*Id.*) .

PEII owns the Playboy Mansion West, home to *Playboy* Editor-In-Chief and Chief Creative Officer Hugh Hefner. (*Id.*) It is a 29-room mansion with a large estate including a game house, swimming area, grotto, zoo, aviary, and expansive yard area for entertaining. (*Id.*) PEII uses the Mansion for corporate activities as well as for television production and magazine photography, and for online, advertising, marketing and Playboy-sponsored events. (*Id.*)

### B. The Use Of The Playboy Mansion For Third-Party Charity Events

Among its uses, PEII rents out the Mansion to third parties for non-*Playboy*-sponsored charitable and civic events. (Declaration of Teri Thomerson ("Thomerson Decl.") at ¶3.) As is typical of the rental of any exclusive venue, PEII offers a contract to the third party with a price-per-person based upon the selection of services that PEII provides for the event. (Declaration of Hank Fawcett ("Fawcett Decl.") Decl. at ¶5; Echavarria Decl. at Ex. B & Ex. N [Fawcett Depo] at 38:10-40:15.) <u>At no time does PEII differentiate between men and women who attend the event – the Promoter pays one amount for each person who attends irrespective of gender.</u> (Fawcett Decl. at ¶¶5, 8; Echavarria Decl. at Ex. B.) Once the third-party promoter determines the size and scope of these services, PEII sets the price-per-head for the third-party to pay PEII, without regard to gender or any

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

other factor. (*Id.*; *see also* Echavarria Decl. at Ex. N [Fawcett Depo] at 38:10-40:15.) PEII has no involvement in what the Promoter charges the public to attend the event, how the Promoter chooses to raise funds for its event, or the identity of the charity "sponsor" for the event. (Fawcett Decl. at ¶6.)

Services provided by PEII for the third-party charity events include: access to the Playboy Mansion grounds (the Mansion itself is off limits); security staff; a staff coordinator to assist the third party with the event; staff to handle set-up, service and clean-up as well as rentals, lighting, and sound; off-site parking and shuttles and valets for "drive on" guests to the Mansion; full bars and bartenders; and food prepared by the Mansion's kitchen. (Echavarria Decl. at Ex. M [Thomerson Depo] at 52:5-53:18.)  In addition to these basic services, PEII can also secure additional items for the event, including ambiance-related entertainment and décor. (*Id.*; *see also* Echavarria Decl. at Ex. N [Fawcett Depo] at 53:14-56:21, 61:16-62:7.)

Finally, separate and apart from PEII, the third-party promoter is able to hire Playmates through Playmate Promotions to attend and act as docents for the grounds during the event. (Echavarria Decl. at Ex. M [Thomerson Depo] at 21:1-23:22.)  Playmate Promotions is a division of PEII that manages appearances by the Playboy Playmates (women who have appeared as centerfolds in *Playboy* magazine). (*Id*. at 21:1-23:22.)

### C. The Promoter MIXnightlife's Use Of The Playboy Mansion For The 2009 White Party

On February 6, 2009, MIXnightlife, through its owner Chris Marcovici (the "Promoter"), contacted PEII, requesting use of the Playboy Mansion for a "White Party" (an event where guests wear all white attire) benefiting the Keep A Breast Foundation (the "2009 White Party").  Statement of Uncontroverted Facts ("SUF") No. 1.  Mr. Marcovici had rented the Mansion for a similar party in 2008.

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Teri Thomerson, Public Relations Director for PEII, responded to the request and prepared a written request form for the 2009 White Party. A Term Sheet was drawn up for the event, citing terms including a proposed $300-per-person price to be paid by the Promoter to PEII. SUF No. 2. As is customary, the Term Sheet pricing did not differentiate between genders. SUF No. 3. The Term Sheet detailed what PEII provided for that fee (parking, shuttles, valet, rentals, lighting, etc.). *Id*. Notably, the term sheet excluded anything related to the promoter's ticketing policy, or what the public would be charged to attend the 2009 White Party. *Id*.

**Basic Services.** The Promoter entered into a contract with PEII for the 2009 White Party (the "Contract"). SUF No. 4. Pursuant to the Contract, for the 2009 White Party, PEII provided: staff for maintenance, security, valets, and other coordinating staff; tents and pop outs; a stage and dance floor area; ambient lighting; cabanas and lounging furniture; tables and chairs; shuttles and parking; passed hors d'oeuvres; buffet stations; bars; gift bags for VIPS; all white décor including white linens, white neon rabbit center pieces, white neon tables for buffets, white velon wrapping the posts in the entrance, and white twinkle lights; and up to twenty women for ambiance.[1] *Id*. PEII and the Promoter arranged for additional men and women to participate in the event without charge, including volunteers and models for a fashion show. SUF No. 5. The Promoter separately hired six Playmates to greet guests and pose for photographs. SUF No. 6. The Promoter also arranged for the audio and video elements at the party, including the video walls in the stage area and the Step & Repeat wall.[2] SUF No. 7. The Promoter insured the event, with PEII listed as an additional insured. SUF No. 8.

---

[1] PEII can secure that certain women (*i.e.*, models, dancers, college students, etc.) work the event for ambiance. (*See* Echavarria Decl. at Ex. N [Fawcett Depo] at 53:14-56:21, 61:16-62:7.) PEII does not pay for or charge these specific women to attend, but rather arranges for these women to be at the event through modeling agencies and other third parties. *Id*.

[2] A Step & Repeat wall is the background for where pictures are taken of guests entering the event.

4
MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Pricing.** After accounting for the services to be provided and the size of the event, PEII set a $400-per-person price from the Promoter for a guaranteed minimum of 200 guests. SUF No. 9. Nothing in the Contract differentiated between the genders of the guest, whether in pricing or otherwise. *Id*. In no way did PEII participate in or dictate the admission price, guest list, or charity donations for the 2009 White Parties – all of these items were set by the Promoter <u>exclusively</u>. SUF No. 10. Likewise, PEII did not receive any money from any guest who attended the 2009 White Party, nor did it have any contact with the guests before they entered the grounds of the Playboy Mansion. SUF No. 11. Instead, pursuant to the Contract, the Promoter paid PEII a total of $80,000 for the event. SUF No. 12.

**Promotional Materials.** The Contract also provided for PEII's review and approval of certain promotional materials created by the Promoter for the event. SUF No. 13. PEII typically reviews promotional materials to determine and approve: (1) the use of the Playboy trademark bunny; (2) the use of Hugh Hefner's name, or promises of Mr. Hefner's attendance at the event; (3) unauthorized use of pictures of Playmates; and (4) any item that might affect the Playboy image. *Id*. The primary purpose of this requirement is to ensure that the Promoter's promotional materials do not lead the public to believe that the event is a Playboy party.

As required by the Contract, Ms. Thomerson reviewed materials provided to her by the Promoter for the 2009 White Party. SUF No. 18. Ms. Thomerson was clear at deposition that she did not recall reviewing any advertisements that contained pricing information. *Id*. In addition, of the advertisements that PEII may have reviewed prior to the 2009 White Party, they all referred to the event as being "presented by" Chris Marcovici and referenced the location of the event as the "Playboy Mansion." SUF No. 19. None of these materials included the use of any Playboy marks or the Playboy name outside of reference to the location of the

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

5

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"Playboy Mansion." *Id.* Ms. Thomerson did not receive or review the materials provided directly to guests once tickets had been purchased. SUF No. 20. Finally, PEII did not create or display any advertisements for the 2009 White Party, and did not review any signage that was displayed at the event. SUF No. 21.

At the 2009 White Party itself, the following items displayed said Playboy Mansion or contained the Playboy bunny logo: (a) some signage at the Event said "The Third Annual / White Party / Playboy Mansion;" (b) approximately six tables had small neon-light rabbit head centerpieces; and (c) two standing bar tables had rabbit heads on them. SUF 22. None of these signs, however, stated that the <u>event</u> was sponsored or promoted by PEII. *Id.*

### D. **Plaintiff's Purchase Of A Ticket And Attendance At The 2009 White Party**

In May 2009, Plaintiff learned about the 2009 White Party through an advertisement on the Craig's List website. SUF No. 23. He researched the event through additional websites and found disparate pricing for males and females, although pricing differed between website advertisements. SUF No. 24. There is no evidence that any of the promotions or advertisements that stated disparate pricing for males and emails were reviewed by PEII. SUF No. 18. None of the promotions or advertisements for the 2009 White Party were posted on any PEII-owned or operated website. SUF No. 25.

Plaintiff admits that he purchased a ticket and attended the 2009 White Party for the purpose of bringing this lawsuit. SUF No. 26. He claims that he was charged more than the female attendees because he is male. *Id.* No one told Plaintiff it was a *Playboy* party, and he acknowledges that the invitation advertisements included the name of the Promoter. SUF No. 27. Nothing that Plaintiff saw stated that the 2009 White Party was "presented by" or sponsored by *Playboy*, nor was the *Playboy* mark ever used outside of reference to the location, the Playboy Mansion. SUF No. 28.

6

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## III. PLAINTIFF CANNOT ESTABLISH A GENUINE ISSUE OF MATERIAL FACT ON ANY OF HIS CLAIMS

Under Federal Rule 56(c), a party moving for summary judgment bears the initial burden of identifying those portions of the record showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). A movant who does not have the burden of proof on an issue at trial need only demonstrate that there is an absence of evidence to support the nonmoving party's case. *Id.*; *In re Brazier Forest Prods. Inc.*, 921 F.2d 221, 223 (9th Cir. 1990). *See also* Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has made its threshold showing, the burden shifts to the nonmoving party to prove the existence of a triable issue of material fact regarding that element of the cause of action or defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading[.]" Fed. R. Civ. P. 56(e). Instead, the opponent "must set forth facts showing that there is a genuine issue for trial." *Id.* Conclusory statements, speculation, personal beliefs, and unsupported assertions will not suffice to withstand summary judgment, and a court will not "presume" "missing facts." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1990).

As set forth below, Plaintiff cannot meet his burden of demonstrating facts of discrimination by PEII, on which all of his claims rely. The undisputed facts show that PEII did not set or charge the allegedly discriminatory pricing, nor did it aid or incite the pricing decision by the Promoter. PEII provided a venue and services for a charity event at a contracted per-person price, without regard to gender. Because Plaintiff cannot show PEII's involvement in the allegedly discriminatory act of pricing the event, he cannot establish critical elements of each of his claims. Consequently, this Court should grant summary judgment to PEII. In the

7

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

alternative, this Court should summarily adjudicate each of the specified issues in PEII's favor, consistent with Rules 56(a) and (g).

### A. Plaintiff's Unruh Act And Gender Tax Repeal Act Claims Fail Because No Facts Show Discriminatory Pricing By PEII

#### 1. To Establish Liability, The Facts Must Demonstrate That PEII Denied, Aided Or Incited A Denial Of Full Accommodations Because Of Gender

Plaintiff's Unruh Act and Gender Tax Repeal Act claims fail because he cannot establish facts showing intentional discrimination through willful, affirmative misconduct on the part of PEII. *Simonelli v. Univ. of Cal. - Berkeley*, 2007 U.S. Dist. LEXIS 86952, *5 (N.D. Cal. 2007). The objective of the Unruh Act (Civil Code § 51 *et seq.*), as well as the Gender Tax Repeal Act (Civil Code § 51.6), is to prohibit businesses from engaging in unreasonable or arbitrary discrimination. *Cohn v. Corinthian Colleges, Inc.*, 169 Cal. App. 4th 523, 527 (2008). Thus, to prevail on the Unruh Act claims, Plaintiff must establish (1) that the defendant <u>denied</u>, <u>aided</u> or <u>incited</u> a denial of full and equal accommodations or services to the plaintiff; (2) that a <u>motivating reason</u> for the defendant's conduct <u>was plaintiff's sex</u>; (3) that plaintiff was harmed; and (4) that defendant's conduct was a substantial factor in causing that harm. Civil Code §§ 51, 51.5, 52; CACI 3020. Aiding or inciting discrimination requires "willful, affirmative misconduct on the part of those who violate the Act." *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1172 (1991) (emphasis added); *see also Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 671 (2009) (holding that intentional discrimination must be established for all violations of the Unruh Act … "unintentional discrimination [does] not violate the Unruh Civil Rights Act *at all*").

Similarly, to prevail on the Gender Tax Repeal Act claim, Plaintiff must demonstrate that (1) the defendant charged Plaintiff more for services of similar or like kind because of his gender; (2) Plaintiff was harmed; and (3) defendant's

8

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

conduct was a substantial factor in causing that harm. Civil Code § 51.6; CACI 3022. In seeking a remedy under Civil Code Section 52, all three claims require that Plaintiff establish facts showing intentional discrimination *by PEII*. Civil Code § 52 ("[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense . . .").

No case has found liability under the Unruh Act or the Gender Tax Repeal Act for a business establishment that did not have direct financial dealings with the plaintiff, which is the case here. In *Cohn v. Corinthian Colleges, Inc.*, 169 Cal. App. 4th 523 (2008), the plaintiff sought a remedy from both the baseball team *and* the sponsor of a Mother's Day tote bag giveaway at a baseball game. Corinthian Colleges officially sponsored the Mother's Day event at an Angels baseball game in which tote bags were given to all female attendees, but not to the male attendees. *Id.* at 526. The Court affirmed summary judgment for Corinthian Colleges because it was not involved with the planning or distribution of the tote bags, and thus could not have aided or incited any discrimination. *Id.* at 530; *compare with Koire v. Metro Car Wash*, 40 Cal. 3d 24, 39 (1985) (holding that car washing companies that offered "Ladies' Day" discounts to women could be liable); *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 165 (2007) (holding that supper club charging male patrons higher prices than female patrons could be liable).

**2.  PEII Did Not Deny, Aid Or Incite The Alleged Disparate Pricing For The Event – PEII Was Paid One Price For Each Person Who Attended The Event, Irrespective Of Gender**

The undisputed facts reveal that PEII did not discriminate on the basis of gender. PEII did not set the guest pricing for the 2009 White Party – instead, PEII received a single price for each person who attended the Event regardless of that person's gender. SUF 2, 3, 9. The 2009 White Party was not a *Playboy* event; it

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

9

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

was an event put on by a third-party Promoter in connection with the Keep A Breast Foundation charity. SUF 1, 4. Like the supper club in *Angelucci* or the car wash in *Koire*, the Promoter is the business entity that set pricing for guests of the event and received payment from the guests. Much like any banquet room at a hotel, PEII provided a location and accompanying services, but did not charge Plaintiff (or any other guest) a fee. SUF 2-12. Indeed, PEII had no contact whatsoever with the guests for the 2009 White Party prior to them entering the grounds of the Playboy Mansion. SUF 11.

Nor can Plaintiff demonstrate that PEII "aided or incited" any discriminatory pricing at the 2009 White Party. Stated differently, there is no evidence that there was "willful, affirmative misconduct" on the part of PEII to charge men and women different pricing to attend the Event (*Harris*, 52 Cal. 3d at 1172):

- PEII charged the Promoter one price for each person who attended the event, irrespective of gender. SUF 9-12.
- PEII had no involvement into what the Promoter charged persons who attended the event. SUF 10.
- PEII had no involvement into how the Promoter chose to raise funds for the event. *Id*.
- PEII did not review any advertisement that set forth the pricing for the event. SUF 18.

Just because PEII reviewed promotional materials to prevent the misuse of its intellectual property and avoid any inference that the 2009 White Party was sponsored by *Playboy*, does not make it liable for what the Promoter charged guests to attend. SUF 18, 19. Nothing in the promotional materials indicated that it was a Playboy party, or that there would be any discrimination based on gender – the Party was not promoted as a "Ladies' Night" or as a female-based promotion of any kind. Without knowledge of any discriminatory pricing, PEII could not have willfully intended or aided in any discrimination in pricing.

10

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Even if PEII did know about the pricing – which it did not – the result is the same. The Promoter created all advertisements and signage for the 2009 White Party. SUF 21. Merely reviewing these materials for misuse of the *Playboy* marks is insufficient to show that PEII aided or incited discrimination. If official sponsorship was insufficient to "aid" discrimination in *Cohn*, then as a non-sponsor that only rented out a venue and reviewed promotional materials to assure they did *not* imply sponsorship, PEII cannot be liable.

Finally, PEII expects that Plaintiff will point to the signage and décor at the event to somehow establish liability. This argument is nothing but a red herring. The signage and décor were viewed only by guests *after* the alleged discrimination had taken place (*i.e.*, the Promoter's charging of different prices for men and women). SUF 22. In addition, that there were fleeting "bunny heads" displayed at the party and signage reaffirmed the location of the party as the "Playboy Mansion" does not create a dispute of fact as to whether PEII aided or incited discriminatory pricing.

A simply analogy makes this point clearly. If a third-party promoter were to hold a gala at the Beverly Hills Hotel, one would expect the Beverly Hills Hotel to provide all the necessary services for the party, including dinnerware and decorations that identify the Beverly Hills Hotel. Such signage identifying this iconic hotel does not establish liability for what the third-party promoter decided to charge people for attending the event.

Assuming Plaintiff was charged more than female attendees of the 2009 White Party, his complaint is against the business that actually set and charged the disparate pricing. He cannot bypass the Promoter to penalize PEII simply because it provided the party venue and is the "deep pocket." Because no facts exist to show that PEII intentionally discriminated, or aided or incited discrimination against Plaintiff, his Unruh Act and Gender Tax Repeal Act claims must fail.

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

11

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### B. Plaintiff Cannot Establish Facts To State A UCL Claim

Plaintiff also brings three claims – the Fourth, Fifth, and Sixth Causes of Action – for violations of California Business & Professions Code Section 17200 ("UCL"). In the operative complaint, Plaintiff alleges that PEII's actions constitute unlawful and unfair business practices.[3] FAC ¶¶ 47(a), 52, 56(a). Review of the facts show that both of these contentions are without merit.

*First,* Plaintiff's UCL claims fail because no facts exist demonstrating an underlying violation of law. The UCL prohibits any person or business establishment from engaging in unfair competition, which is defined as any unlawful, unfair, or fraudulent business practice. Cal. Bus. & Prof. Code § 17200. UCL claims are derivative of other alleged violations, borrowing the violations to fit the "unlawful" prong of the statute. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). "[B]y proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002); *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999). Thus, the viability of a UCL claim "stands or falls" with the underlying claim. *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001); *see also Ingels v. Westwood One Broadcasting Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (extinguishing the borrowed claim also extinguishes the UCL claim).

Plaintiff's UCL claims all derive from the allegations that PEII violated the Unruh Act and Gender Tax Repeal Act. Because the underlying violations do not exist, the UCL claims must fail.

---

[3] Apparently recognizing that no such claim exists, Plaintiff does not allege that PEII's conduct was a "fraudulent" business practice.

12
MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Second*, the alleged wrong was not an unfair business practice of PEII. By its terms, the UCL also prohibits "unfair" business acts or practices. Cal. Bus. & Prof. Code § 17200. While the test for whether an act is "unfair" under the UCL is not always clear, courts appear to place it somewhere between "unlawful" conduct and "fraudulent" conduct. In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel Co.*, 20 Cal. 4th 163 (1999), the court reached a test for parties in direct competition with one another, but limited its application to such competitors. *Id.* at 187. In other words, the *Cel-Tech* test may not apply to a consumer case, such as the case here. The post *Cel-Tech* consumer line of cases generally followed a rule that "unfair" means conduct that, while perhaps not unlawful, is nonetheless against policy. *Schnall v. Hertz*, 78 Cal. App. 4th 1144, 1166-1167 (2000). For further guidance, some courts also look to the Federal Trade Commission standard, which requires that the practice not be "reasonably avoidable by consumers." 15 U.S.C. § 45(n).

The alleged conduct at issue here, however, is the same as under the "unlawful" prong – violations of the Unruh Act and Gender Tax Repeal Act. The policy of eradicating discrimination is the same; thus, there is no difference between "unlawful" and "unfair" in this context. PEII's only "practice" involved charging a flat fee to the Promoter for the use of its property and services. As the undisputed evidence shows that fee was the same regardless of gender. SUF 9-12. With a guaranteed minimum number of guests, PEII would receive its payment even if all guests paid nothing or all guests paid what Plaintiff paid. *Id.* Because Plaintiff cannot show that PEII charged *any* price (or aided and incited a charge) to Plaintiff, then just as there was no unlawful conduct, there is likewise no unfair conduct.

## IV. CONCLUSION

PEII did not set any discriminatory pricing, nor did it aid or incite any such discrimination for the 2009 White Party. All PEII did was contract out its venue and services for the Promoter's charitable event at a flat per-person fee. PEII

13

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

reviewed promotional materials only for the use of its intellectual property to avoid the implication of sponsorship by *Playboy*. These undisputed facts demonstrate that PEII is not liable for any allegedly discriminatory pricing for the 2009 White Party. Accordingly, PEII respectfully submits that the Court should grant summary judgment in PEII's favor and dismiss this action in its entirety.

DATED:  November 7, 2011            DAVIS WRIGHT TREMAINE LLP
                                    JOHN P. LeCRONE
                                    CAMILO ECHAVARRIA
                                    NICOLE M. SANDOZ


                                    By:  /s/*Camilo Echavarria*
                                              Camilo Echavarria

                                    Attorneys for Defendant
                                    PLAYBOY ENTERPRISES
                                    INTERNATIONAL, INC.

MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................... 1

II. STATEMENT OF BACKGROUND AND UNDISPUTED FACTS ............ 2

    A. PEII's Playboy Mansion .................................................................. 2

    B. The Use Of The Playboy Mansion For Third-Party Charity Events .............................................................................................. 2

    C. The Promoter MIXnightlife's Use Of The Playboy Mansion For The 2009 White Party ................................................................ 3

    D. Plaintiff's Purchase Of A Ticket And Attendance At The 2009 White Party ...................................................................................... 6

III. PLAINTIFF CANNOT ESTABLISH A GENUINE ISSUE OF MATERIAL FACT ON ANY OF HIS CLAIMS ........................................ 7

    A. Plaintiff's Unruh Act And Gender Tax Repeal Act Claims Fail Because No Facts Show Discriminatory Pricing By PEII ................ 8

        1. To Establish Liability, The Facts Must Demonstrate That PEII Denied, Aided Or Incited A Denial Of Full Accommodations Because Of Gender .............................. 8

        2. PEII Did Not Deny, Aid Or Incite The Alleged Disparate Pricing For The Event – PEII Was Paid One Price For Each Person Who Attended The Event, Irrespective Of Gender ................................................... 9

    B. Plaintiff Cannot Establish Facts To State A UCL Claim ................. 12

IV. CONCLUSION ....................................................................................... 13

i
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)..................7

*Angelucci v. Century Supper Club*,
   41 Cal. 4th 160 (2007) ................................................................ 9, 10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163 (1999) ............................................................... 12, 13

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..................7

*Cohn v. Corinthian Colleges, Inc.*,
   169 Cal. App. 4th 523 (2008) ................................................ 8, 9, 11

*Goldman v. Standard Ins. Co.*,
   341 F.3d 1023 (9th Cir. 2003) ......................................................... 12

*Harris v. Capital Growth Investors XIV*,
   52 Cal. 3d 1142 (1991) ................................................................ 8, 10

*In re Brazier Forest Prods. Inc.*,
   921 F.2d 221 (9th Cir. 1990) .............................................................7

*Ingels v. Westwood One Broadcasting Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ........................................................ 13

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ..................................................................... 12

*Koire v. Metro Car Wash*,
   40 Cal. 3d 24 (1985) ................................................................... 9, 10

*Krantz v. BT Visual Images*,
   89 Cal. App. 4th 164 (2001) ............................................................ 12

*Lazar v. Hertz Corp.*,
   69 Cal. App. 4th 1494 (1999) .......................................................... 12

ii
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Lujan v. Nat'l Wildlife Fed'n*,
 497 U.S. 871, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1990)...................7

*Munson v. Del Taco, Inc.*,
 46 Cal. 4th 661 (2009) ...........................................................................8

*Schnall v. Hertz*,
 78 Cal. App. 4th 1144 (2000) ............................................................. 13

*Simonelli v. Univ. of Cal. - Berkeley*,
 2007 U.S. Dist. LEXIS 86952 (N.D. Cal. 2007) ...................................8

**STATUTES**

15 U.S.C. § 45(n) ............................................................................... 13

California Business & Professions Code § 17200 ............................ 12, 13

California Civil Code § 51 ............................................................. 1, 8, 9

California Civil Code § 51.5 .......................................................... 2, 8, 9

California Civil Code § 51.6 .......................................................... 2, 8, 9

California Civil Code § 52 ............................................................... 8, 9

Unruh Act (Civil Code § 51 *et seq.*) ........................................................8

**RULES**

Federal Rule of Civil Procedure 56(a) ...................................................8

Federal Rule of Civil Procedure 56(c) ...................................................7

Federal Rule of Civil Procedure 56(c)(1)(B) .........................................7

Federal Rule of Civil Procedure 56(e) ...................................................7

Federal Rule of Civil Procedure 56(g) ...................................................8

**TREATISES**

CACI 3020 .............................................................................................8

CACI 3022 .............................................................................................9

iii
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
DWT 18374183v5 0061612-000015

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899